# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CHIFFONE BRUNSON,

      Plaintiff,

v.

THE STATE OF NEW JERSEY, *et al.*,

      Defendants.

Docket No.: 17-cv-04577

OPINION

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff's Amended Complaint alleges state and federal civil rights claims against the State of New Jersey; the Essex County Prosecutor's Office ("ECPO"), Quovella M. Spruill ("Spruill") in her official and individual capacities, Robert D. Laurino ("Laurino") in his official and individual capacities, (collectively, the "ECPO Defendants"); the City of East Orange, East Orange Police Chief William C. Robinson in his individual and official capacities, Officer Green[1] of the East Orange Police Department in her individual and official capacities; Essex County, the Essex County Jail, Essex County Sheriff Armando B. Fontoura; John Doe(s) 1-10, and ABC Entities 1-10.[2]

Now pending before the Court is a Motion to Dismiss the Amended Complaint filed by the State of New Jersey and the ECPO Defendants, including Defendants Spruill and Laurino in both their individual and official capacities. *See* Fed. R. Civ. P. 12(b)(1), (b)(6). Plaintiff filed a Cross-Motion to Compel Disclosures under Rule 26. There was no oral argument. Fed. R. Civ. P. 78(b). For the following reasons, Defendants' motion is **GRANTED** and all claims against the ECPO Defendants and the State are **DISMISSED WITH PREJUDICE**. Plaintiff's discovery motion is **DENIED**. Claims against the other

---

[1] Plaintiff has not yet been able to identify Officer Green's full name. *See* Am. Compl. ¶ 5.

[2] The Amended Complaint also names the East Orange Police Department as a defendant. ECF No. 22. However, the parties stipulated to the dismissal with prejudice of the East Orange Police Department on November 17, 2018. ECF No. 18. The City of East Orange—not its police department—remains a Defendant in this case. *See Padilla v. Twp. Of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (explaining that a police department cannot be sued separately from the municipality to which it belongs).

Defendants named above—including Essex County and the City of East Orange—remain pending.

## I. <u>BACKGROUND</u>:

In 2015, Plaintiff Chiffone Brunson, a New Jersey resident, temporarily relocated to St. Lucie County, Florida, to care for her ill father. Am. Compl. ¶ 25, ECF No. 22. On June 23, 2015, a St. Lucie police officer executed a traffic stop on Plaintiff for failing to stop at a red light.[3] *See Id.* ¶ 38. Upon conducting a routine background check, the officer discovered an outstanding arrest warrant for Plaintiff in East Orange, New Jersey. *Id.* ¶ 39. The warrant based on Plaintiff's suspected involvement in the 2015 robbery of a grocery store in East Orange, which was captured on store surveillance video. *Id.* ¶¶ 30, 31. That video depicted a female with a tattoo on her upper left arm. *Id.*

On or about June 24, 2015, local authorities notified the Essex County Sheriff's Office of Plaintiff's arrest. St. Lucie officers provided East Orange police with photographs of a tattoo located on Plaintiff's lower arm that depicted her daughters' names and flowers. *Id.* ¶ 30. These photographs did not align with the appearance of the suspect caught on video and thought to be Plaintiff. According to the Amended Complaint, "[e]ven the most cursory review of the videotape obtained from the store's surveillance system would have revealed, based on a comparison of tattoos, that [Plaintiff] did not perpetrate the crime." *Id.* ¶ 31. Nevertheless, Defendants John Doe Officer #1 and Officer Green provided the video and photographs to ECPO "to support an indictment against [Plaintiff] as the perpetrator of the crime, despite . . . [knowledge] that this evidence was, in fact, exculpatory." *Id.* ¶ 32.[4]

Among the ECPO employees who reviewed the photographs and surveillance tape were Defendants Laurino and Spruill. Defendant Laurino was Acting First Assistant Prosecutor for Essex County. Spruill's title was Temporary Acting Chief of Investigators assigned to ECPO, responsible for, *inter alia*, "facilitating the overall extradition process . . . and whose duties included personally reviewing files to ensure that all ECPO policies and procedures regarding investigative support were complied with." *Id.* ¶ 12." Plaintiff alleges that the ECPO Defendants "willfully failed to verify the identity of [Plaintiff] as the correct suspect . . . ." *Id.* ¶ 35. On June 25, 2017, based on the tattoo photographs and surveillance video, the ECPO Defendants initiated an extradition request in order to prosecute Plaintiff back in New Jersey. *Id.* ¶ 45. According to Plaintiff, Assistant

---

[3] The legality of the traffic stop is not at issue and is irrelevant to the motions pending.

[4] The Amended Complaint also states that John Doe Sergeant or Lieutenant #2 was the supervisor of John Doe Officer #1 and Officer Green, responsible for personally reading and reviewing each and every police report and investigation and complaint prepared . . . for the express purpose of ensuring accuracy . . . and that there was evidence and probable cause to support an arrest." *Id.* ¶ 33. However, the Court understands these individuals to be employed by Defendant East Orange, which has not joined this motion to dismiss.

Prosecutor John Doe #5 "willfully failed to notify the judge who issued the extradition order that the surveillance video did not depict [Plaintiff] as the perpetrator of the crime . . . ." *Id.* ¶ 46.

On June 28, 2015, after four days in the custody of the St. Lucie County Sherriff's Office, *id.* ¶ 48, two unnamed members of the Essex County Sheriff's Department (Officers # 3 and #4) picked up Plaintiff and transported her by motor vehicle back to New Jersey. *Id.* ¶ 50. The trip took several days, during which time Plaintiff was required to eat and sleep in the vehicle. *Id.* ¶ 51.

On July 8, 2015, Plaintiff was incarcerated in the Essex County Jail. *Id.* ¶ 52. During Plaintiff's incarceration, Assistant Prosecutor John Doe #5 attempted to extract a guilty plea by informing Plaintiff's Public Defender that video evidence in the State's possession showed Plaintiff committing the burglary, whereupon the Public Defender advised Plaintiff to plead guilty. *Id.* ¶ 54. Plaintiff refused, and remained incarcerated for over a month. *Id.* ¶ 55. She made a court appearance on August 17, 2017. *Id.* ¶ 62. Upon reviewing the surveillance video, the judge dismissed all charges against Plaintiff. *Id.* She had spent a total of 55 days in custody. *Id.* ¶ 63.

Plaintiff initially filed her complaint on June 21, 2017, against the ECPO Defendants, the City of East Orange, the East Orange Police Department, Essex County, Essex County Jail, Essex County Sherriff Armando B. Fontoura, Officer Green, Essex County Chief of Police William C. Robinson, Essex County Prosecutor's Office ("ECPO"), Laurino, Spruill, and other unnamed or fictitious individuals and entities. ECF No. 1. The parties then stipulated to dismissal of the East Orange Police Department. ECF No. 18. Plaintiff filed her amended complaint on February 2, 2018. ECF No. 22. On March 2, 2018, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) was filed by the State of New Jersey, ECPO, and Laurino and Spruill, in both their official and individual capacities. Plaintiff conceded to dismissal of the State in light of sovereign immunity, ECF No. 18, but opposes dismissal of the ECPO Defendants. Plaintiff's opposition paper also includes a cross-motion to compel ECPO Defendants to comply with certain Rule 26 disclosure requests. This Opinion addresses both the motion to dismiss and Plaintiff's Rule 26 motion.

## II.  **LEGAL STANDARD:**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States, 404 F.3d 744*, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. See *Warth v. Seldin*, 422 U.S. 490, 501 (1975);

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 129 S.Ct. at 1949 (2009).[5]

## III. DISCUSSION

This Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. § 1332, and pendant jurisdiction over the state claims pursuant to 28 U.S.C. § 1367. Title 42, Section 1983 provides relief for the deprivation of any right secured by the Constitution and laws by a "person" acting "under color of any [State] statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Section 1985 provides relief for conspiracy to interfere with civil rights in three separate scenarios. *See* § 1985(c). Plaintiff asserts seven causes of action against Defendants:

> Count 1: 42 U.S.C. § 1983, 1981, & 1985 for deprivation of Plaintiff's constitutional rights, including those secured under the Fourth and Fourteenth Amendments. U.S. Const. amend. IV, XIV;
> Count 2: New Jersey Civil Rights Act ("NJCRA"), N.J. Const. art. I;
> Count 3: Negligence;
> Count 4: Abuse of Authority;
> Count 5: Malicious Prosecution;
> Count 6: Intentional Infliction of Emotional Distress;
> Count 7: False Arrest and False Imprisonment.

---

[5] References in the Amended Complaint to racial animus are conclusions without any factual predicate. *See* Am. Compl. ¶ 16. ("The defendants were racially discriminatory in that [Plaintiff] is African-American and exposed to selective and disparate treatment due to her race and the greater perception that she was more likely to engage in criminal activity without any probable cause to support same."). Because these statements are conclusory and lack "factual enhancement," the Court will not consider them in its analysis of Defendants' motion to dismiss. *Twombly*, 550 U.S. at 557.

The Amended Complaint is difficult to construe because it sometimes fails to connect factual allegations to specific individuals and causes of action. The crux, however, is that Defendants extradited, incarcerated, and prosecuted Plaintiff despite possessing patently exculpatory evidence. Allegations of supervisory liability are included as follows:

> [ECPO Defendants] failed to properly supervise, train and exercise oversight of the East Orange Police Department Officers and Detective, including the development, promulgation, and implementation of policies, procedures and standards relating to investigation of crimes, and to conduct proper internal affairs investigations and to impose discipline on police officers and detectives who perform improper criminal investigations and ignore exculpatory evidence while acting under color of law and in permitting and allowing plaintiff to be charged without probable cause.

Am. Compl. ¶ 33.

The ECPO Defendants, including Defendants Laurino and Spruill in their official and individual capacities, move under 12(b)(1) and 12(b)(6) to dismiss the Amended Complaint on the following grounds: (1) sovereign immunity; (2) the ECPO Defendants are not "persons" vulnerable to suit under § 1983 or the NJCRA; (3) absolute and qualified immunity; and (4) good faith immunity under the New Jersey Tort Claims Act ("TCA"); 59:3-3. Plaintiff concedes that the Eleventh Amendment bars all claims against the State. *See* Const. am. XI. Accordingly, all federal and state claims against the State are **DISMISSED WITH PREJUDICE.** *See Alden v. Maine.*, 527 U.S. 706 (1999).

### A.     Eleventh Amendment Sovereign Immunity[6]

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Sovereign immunity extends to state agencies and state officers, 'as long as the state is the real party in interest.'" *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 857 (3d Cir. 2014) (quoting *Fitchik v. N. J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989)). "To determine whether the state is the real party in interest, this Court considers three factors: (1) whether the money to pay for the judgment would come from the state; (2) the status of the agency under state law; and

---

[6] Applying sovereign immunity entails an analysis distinct but "closely parallel" to assessing whether a defendant is a "person" vulnerable to suit under 42 U.S.C. § 1983. *Harris v. Soto*, No. 16-2551 (KM)(JBC), 2016 WL 7391037, at *3 (D.N.J. Dec. 21, 2016). "Where, as here, the entity claiming immunity is determined to be an arm of the state, however, it is beyond dispute that it is not a 'person' for § 1983 purposes." *Karns v. Shanahan*, 879 F.3d 504, 519 (3d Cir. 2018)(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

(3) what degree of autonomy the agency has." *Id.* (citing *Fitchik* 873 F.2d, at 659. Applying these factors, the Court finds that the Eleventh Amendment prohibits claims against the ECPO Defendants, including Defendants Laurino and Spruill in their official capacities.

The first *Fitchik* factor weighs in favor of immunity because the TCA indemnifies a State employee for whom the Attorney General provides a defense. N.J.S.A. § 59:10-1. Plaintiff argues that this obligation does not extend to prosecutors engaged in willful misconduct. Opp. Br. at 12,13. It is true that the TCA does not *require* the Attorney General to indemnify an employee who engages in willful misconduct or acts beyond the scope of his or her employment. N.J.S.A. 59:10-2. *See Murphy v. Middlesex Cty.*, No. 15-7102 (FLW) 2017 WL 6342154, at *4,5 (Dec. 12, 2017). In this case, however, the Attorney General expressly "assumed responsibility for the defense and indemnification of the ECPO Defendants." Defs.' Br. at 14. Damages awarded in this case would be drawn from the State's treasury. *See Fitchik*, 873 F.2d at 660.

The second *Fitchik* factor also favors granting the ECPO Defendants sovereign immunity. Under New Jersey law, when county prosecutors and their subordinates perform law enforcement and prosecutorial functions, "they act as agents of the State." *Hyatt v. Cty. of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009). The Amended Complaint describes classic enforcement and prosecutorial actions, which, errant or not, fall within ECPO's role as an arm of the State. *See id.*, 340 F. App'x at 836–37. In response, Plaintiff characterizes ECPO's failure to properly hire and discipline subordinates as "purely administrative" actions. *See Coleman v. Kaye*, 87 F.3d 1491, 1505,06 (3d Cir. 1996). As the Third Circuit has explained, however, "[t]raining and policy decisions that require legal knowledge and discretion are related to prosecutorial functions and are unlike administrative tasks concerning personnel." *Hyatt*, 340 F. App'x at 836,37 (citations omitted). "The administrative obligations at issue here are [] unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

The third *Fitchik* factor—the degree of a prosecutor's autonomy from the state— also favors granting sovereign immunity. Under New Jersey statutory law:

> Whenever in the opinion of the Attorney General the interests of the State will be furthered by so doing, the Attorney General may (1) supersede a county prosecutor in any investigation, criminal action or proceeding, (2) participate in any investigation, criminal action or proceeding, or (3) initiate any investigation, criminal action or proceeding.

N.J.S.A. § 52:17B-107. Hence, the ECPO Defendants enjoy little, if any, autonomy from the State.

Because application of the *Fitchik* factors shows that the "state is the real party in interest," the Court finds that the Eleventh Amendment immunizes ECPO Defendants—including Defendants Laurino and Spruill, in their official capacities—from all claims. All seven state and federal Claims against the ECPO Defendants are **DISMISSED WITH PREJUDICE**. The Court will now assess suits brought against two of the ECPO Defendants in their individual capacities.[7]

**B. Suits against Defendants Laurino and Spruill in their Individual Capacities**

State officials sued in their "individual capacities" are "persons" vulnerable to suits under § 1983, and do not enjoy sovereign immunity under the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983."). *See also Estate of Lagano*, 769 F.3d at 857. Plaintiff argues that Laurino (Acting First Assistant Prosecutor for Essex County) and Spruill (Temporary Acting Chief of Investigators assigned to ECPO) are individually liable as "policymakers" and "field supervisors" for violating Plaintiff's constitutional rights. *See A.M. Luzerne Cty.*, 372 F.3d 572 (3d Cir. 2004); *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989). As described above, the Amended Complaint alleges that both Spruill and Laurino were aware of exculpatory evidence and decided nonetheless to extradite and prosecute Plaintiff for burglary, and further that "Laurino and Spruill maintained an unofficial policy or practice in how to conduct investigations, obtain extradition, how to proceed to evaluate probable cause and in failing to produce exculpatory evidence." *See* Pl.'s Br. 20. The Court finds that both are protected by absolute prosecutorial immunity.

1. <u>Absolute Prosecutorial Immunity</u>

"Prosecutors enjoy absolute immunity for the initiation and pursuit of a criminal prosecution." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, (1993) (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)). Under *Imbler*, courts apply absolute immunity not according to official title, but rather to official conduct that is "functional[ly] tied to the judicial process." *See id.* at 277-78. Absolute immunity extends beyond formal proceedings and includes "the duties of the prosecutor in his role as advocate for the State [which] *involve actions preliminary to the initiation of a prosecution* and actions apart from the courtroom." *Buckley*, 509 U.S. at 272 (emphasis added). This includes "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial . . . ." *Id.* at 273. (finding no absolute immunity

---

[7] Plaintiff mischaracterizes her claims as *Monell* claims. Municipalities or local entities may be held liable via § 1983 "when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996) (citing *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658 (1978)). The moving Defendants are state actors, however, and were not acting pursuant to a municipal custom or policy. *Monell* does not permit suits against the ECPO Defendants.

because "[t]he conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions."). So long as the alleged actions themselves are functionally related to prosecution, the Supreme Court's jurisprudence immunizes even gross prosecutorial misconduct. *Burns v. Reed*, 500 U.S. 478, 489, 90 (1991).[8]

### a. Defendant Robert D. Laurino

Plaintiff alleges that ECPO prosecutor Robert Laurino sought extradition and prosecuted Plaintiff despite knowledge of exculpatory evidence. If true, that conduct, while deeply troubling, is "preliminary to the initiation of a prosecution" and protected absolutely by prosecutorial immunity. *See Moore v. Middlesex Cty. Prosecutor's Office,* 503 F. App'x 108, 109 (3d Cir. 2012) (citing *Imbler*, 424 U.S. at 431-32 n. 34) ("[T]he decision to withhold such evidence from the defense while functioning as an advocate for the state is protected by absolute immunity"); *Buckley*, 509 U.S. at 273 (absolute immunity shields the "professional evaluation of the evidence assembled by the police" when determining whether to pursue charges.). Attempts to "coerce Plaintiff to plead guilty" were functionally prosecutorial, not investigative. *Id.* at 273. ("There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.").

Further, initiating the extradition of Plaintiff from Florida to New Jersey was "intimately associated with" ECPO's effort to prosecute Plaintiff.[9] *See Dababnah v. Keller-Burnside*, 208 F.3d 467, 472 (4th Cir. 2000) ("We agree that absolute immunity attaches to [defendant's] request for [plaintiff-appellee's] extradition. Insuring [sic] that a defendant is present both for trial and for punishment is critical to a prosecutor's discharge of her duties."). *See also Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1150 (2d Cir. 1995); ("If prosecutors are concerned with possible liability when they take the steps necessary to make a defendant available for prosecution, the decision whether or not to prosecute may be directly affected. And that is precisely the type of concern that absolute

---

[8] In the context of this action, Plaintiff's bald assertion that Defendant Spruill "performed purely investigative duties," Am. Compl. ¶ 47, is a legal conclusion that does not move the needle away from dismissal under Rule 12. *Twombly*, 550 U.S. at 557.

[9] One might distinguish between the legal decision to extradite, which is generally "prosecutorial," and the physical manner of extradition, which has "administrative" qualities. The Amended Complaint states that"[t]he trip to New Jersey took several days . . . thereby requiring Brunson to eat and sleep in the Essex County Sheriff Department vehicle." Am. Compl. ¶ 51. Plaintiff, however, does not incorporate these facts into any of its seven claims against ECPO or Defendants Spruill or Laurino; accordingly, the facts do not factor into the analysis of absolute prosecutorial immunity in this case.

immunity seeks to foreclose."). The claims against Defendant Laurino in his individual capacity are therefor **DISMISSED WITH PREJUDICE**.

### b.  Defendant Quovella M. Spruill

Defendants argue that Spruill is "entitled to derivative absolute prosecutorial immunity as the Amended Complaint alleges that she was performing investigative activities *at the behest of the prosecutor's office*." Defs.' Br. at 20 (emphasis added). *Imbler* is not chiefly concerned with one's title, but rather with actions "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. The Third Circuit has explained:

> An investigator directly employed by the district attorney to do a particular investigative job related to the prosecution of an accused is not the equivalent of the ordinary police officer, who is empowered by the state to initiate discretionary acts depriving others of their rights and whose many activities in the prevention of crime and enforcement of law need not be related to the judicial process.

*Black v. Bayer*, 672 F.2d 309, 321 (3d Cir. 1982) *abrogated on other grounds by D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364 (3d Cir. 1992). Presumably, most of an investigator's activity is functionally "investigatory." In this particular case, however, the allegations against Spruill are essentially identical to those alleged against prosecutor Laurino, undertaken in the course of prosecution. Spruill only became involved to assist ECPO in facilitating extradition and prosecution, well after a warrant had been issued for Plaintiff's arrest. The Amended Complaint does not allege that Spruill (or her staff) investigated the crime prior to, or independently from, the prosecutorial process. Accordingly, Spruill enjoys absolute immunity, and all claims against her are **DISMISSED WITH PREJUDICE**.

### C.  Section 1981 provides no private cause of action

Section 1981 prohibits race discrimination under color of state law, but does not provide a private cause of action. *See McGovern v. City of Phil.*, 554 F.3d 114, 121 (3d Cir. 2009) ("the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.") (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, (1989)). The Section 1981 claim is therefore **DISMISSED WITH PREJUDICE**.

### D.  Plaintiff's Cross-Motion to Compel Rule 26 Disclosures

In addition to opposing Defendants' motion to dismiss, Plaintiff simultaneously moves the Court to compel Defendants to make certain Rule 26 disclosures, including production of the surveillance tape of the burglary and the identities of all "John

Doe/ABC" Defendants named in the Amended Complaint. Rule 26 disclosures become due at or within 14 days of the parties' scheduling conference. Rule 26(a)(1)(C). Originally scheduled for March 27, 2018, the conference was canceled pending the outcome of this dispositive motion. The motion is procedurally defective and therefore **DENIED**.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Dismiss the Amended Complaint is **GRANTED** and the Plaintiff's discovery motion is **DENIED**. All claims against the State and the ECPO Defendants (including Defendants Laurino and Spruill in their individual and official capacities) are **DISMISSED with prejudice**.

Claims remain pending against the non-moving Defendants, including the City of East Orange, East Orange Police Chief William C. Robinson (in his individual and official capacities), Officer Green of the East Orange Police Department (in her individual and official capacities); Essex County, the Essex County Jail, and Essex County Sheriff Armando B. Fontoura. An appropriate Order follows.


/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**July 12, 2018**